**Manuel MUNIZ–CABRERO,**
**Plaintiff, Appellant,**

v.

**Dr. Alejandro RUIZ, et al.,**
**Defendants, Appellees.**

No. 93–2099.

United States Court of Appeals,
First Circuit.

Heard March 10, 1994.

Decided May 18, 1994.

Jesus E. Cuza with whom Vicente & Cuebas was on brief for appellant.

James D. Noel, III with whom Ledesma, Palou & Miranda was on brief for appellees.

Before CYR, Circuit Judge, BOWNES, Senior Circuit Judge, and STAHL, Circuit Judge.

STAHL, Circuit Judge.

Plaintiff-appellant Manuel Muniz Cabrero appeals the district court's grant of summary judgment in favor of defendants-appellees Dr. Alejandro Ruiz ("Ruiz"), Dr. Karen Soto ("Soto"), Dr. Olga Hernandez ("Hernandez"), and Edmundo Carrero ("Carrero"). Because we agree with the district court's finding that plaintiff's 42 U.S.C. § 1983 action is time-barred, we affirm.

## I.

### FACTUAL BACKGROUND AND PRIOR PROCEEDINGS

The following facts are uncontested. In July 1982, plaintiff was hired to work at the Sports Complex at the state-run University of Puerto Rico, Mayaguez Campus ("University"). From 1983 to present, plaintiff has served as the Sports Complex's "Executive Official I," a career position roughly equivalent to the more familiar title of Director.[1] Plaintiff is also an active member of the New Progressive Party ("NPP"), whose gubernatorial candidate lost the general election in November 1984.

In August 1990, Ruiz, an active member of the Popular Democratic Party ("PDP"), was appointed Chancellor of the University. Three months after assuming office, Ruiz met with the University's Administrative Board[2] to propose a reorganization plan. Under the plan, the Sports Complex, which had always operated as an independent department under the direct control of the Chancellor, was to be merged with the Physical Education Department at the University's Arts and Sciences College.

On November 15, 1990, the Administrative Board unanimously approved the proposal to be effective December 1, 1990, and subject to review at the conclusion of the 1990–91 academic year.[3] On or about November 30, 1990, plaintiff met with Ruiz and Hernandez, Dean of the Faculty of the College of Arts and Sciences, to discuss the reorganization. At that meeting, Ruiz informed plaintiff that, under the new structure, plaintiff would report to Soto, Director of the University's Physical Education Department and, in her

---

1. Under Puerto Rico law, employees with career status enjoy property rights in their continued employment. *See Rivera–Ruiz v. Gonzalez–Rivera*, 983 F.2d 332, 334 (1st Cir.1993); *Kauffman v. Puerto Rico Tel. Co.*, 841 F.2d 1169, 1173 (1st Cir.1988).

2. Both Ruiz and Hernandez are members of the Administrative Board.

3. The second semester ended in May 1991.

absence, to Carrero, Associate Director of Physical Education. Ruiz also gave plaintiff a letter dated November 30, 1990, which formally detailed the new arrangement.

Between December 1, 1990, and February 20, 1991, plaintiff missed forty-seven days of work. In his absence, Soto and Hernandez temporarily took over his responsibilities, including the review of mail addressed to plaintiff. On April 12, 1991, plaintiff wrote to Soto stating that although he returned to work as of February 20, 1991, he had not been assigned any tasks. Plaintiff also complained that the duties he used to perform were now discharged by Soto and Carrero. Five days later, in a letter dated April 17, 1991, Soto provided plaintiff with a detailed description of his responsibilities under the new structure. In that letter, Soto remarked that the duties as outlined "follow the provisions of the [personnel form] you signed with the Campus." Thereafter, on May 1, 1991, plaintiff, Soto and Carrero met to clarify the functions described in the April 17 letter. In his final relevant correspondence, a May 9, 1991, letter to Soto, plaintiff wrote: "After having evaluated the duties assigned to me it is easy to interpret that I have been demoted from my position and functions." In closing, plaintiff noted that he would continue to perform his duties as assigned. Thereafter, plaintiff continued to serve as Executive Director I, occupying his same office and suffering no reduction in salary.

On June 26, 1992, plaintiff filed a complaint under 42 U.S.C. § 1983, charging Ruiz, Hernandez, Soto and Carrero with political discrimination in violation of plaintiff's First, Fifth and Fourteenth Amendment rights. Plaintiff charged, *inter alia*, that he was the victim of "illegal activity" since November 1984, such activity intensifying in August 1990 when the four defendants, all allegedly members of the then-ruling PDP or some unspecified party other than the NPP, plotted to effect the reorganization, thereby attempting to demote plaintiff solely because of his membership in the NPP. Plaintiff's complaint sought both monetary damages and injunctive relief.

On February 25, 1993, defendants filed a motion for summary judgment arguing, *inter alia*, that the § 1983 action was time-barred.

Plaintiff filed an opposition to defendants' motion on April 21, 1993. In an opinion and order dated May 24, 1993, the district court granted defendants' motion, finding among other things, that the purported discrimination occurred outside of the statute of limitations period, 826 F.Supp. 591. The district court further found that plaintiff had not alleged sufficient facts to suspend the limitations period under a "continuing violations" theory. It is from these rulings that plaintiff appeals.

## II.
### STANDARD OF REVIEW

Summary judgment is appropriate when the record reflects "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In this context, 'genuine' means that the evidence is such that a reasonable jury could resolve the point in favor of the nonmoving party." *Rodriguez–Pinto v. Tirado–Delgado*, 982 F.2d 34, 38 (1st Cir.1993) (internal quotations and citations omitted). As always, we review grants of summary judgment *de novo*, indulging all reasonable inferences in the nonmovant's favor. *See Levy v. FDIC*, 7 F.3d 1054, 1056 (1st Cir.1993). Nonetheless, the nonmovant may not rely upon "unsupported allegations; rather, [s/]he must set forth specific facts, in suitable evidentiary form, in order to establish the existence of a genuine issue for trial." *Rivera–Muriente v. Agosto–Alicea*, 959 F.2d 349, 352 (1st Cir.1992). "A party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such reasons on appeal." *Rodriguez–Pinto*, 982 F.2d at 41 (internal quotations and citations omitted). Finally, "Rule 56 may be used to determine the applicability of a statutory time bar to a particular set of facts." *Id.*

### III.
### DISCUSSION

Plaintiff argues that the district court erred in finding that his complaint was time-barred. In essence, he argues that the Administrative Board did not have the power to

effect the reorganization, that his "demotion" was therefore invalid, and that any and all repercussions stemming from this "illegal demotion" constituted separate and actionable "continuing violations" of plaintiff's constitutional rights, each restarting the limitations clock. We do not agree.

### A. Statute of Limitations

■ "Under 42 U.S.C. § 1983, an aggrieved individual may sue persons who, acting under color of state law, abridge rights, immunities, or privileges created by the Constitution or laws of the United States." *Johnson v. Rodriguez,* 943 F.2d 104, 108 (1st Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 948, 117 L.Ed.2d 117 (1992). Whereas the personal injury statute of limitations of the forum state governs in § 1983 actions, *see, e.g. Owens v. Okure,* 488 U.S. 235, 236, 109 S.Ct. 573, 574, 102 L.Ed.2d 594 (1989), the date of accrual, i.e., the date on which the limitations clock begins to tick, is determined by reference to federal law. *Rivera–Muriente,* 959 F.2d at 352. Puerto Rico's applicable statute, P.R.Laws Ann. tit. 31, § 5298 (1991), prescribes a one-year limitations period beginning on the date of accrual. *Id.* Under federal law, the limitations "period in a § 1983 case ordinarily starts when the plaintiff knows, or has reason to know, of the harm on which the action is based." *Id.* at 353 (collecting cases).

■ We begin by noting that if any civil rights violation occurred here, it occurred on December 1, 1990, when the Administrative–Board–approved merger became effective. Plaintiff, by his own testimony, knew of the full impact of the transfer, at the very latest, in May 1991 when plaintiff wrote to Soto that he would perform his duties as assigned even though he believed he had been demoted. Therefore, plaintiff's one-year limitations period commenced at the very latest in May 1991 and terminated in May 1992, a full month before the filing of plaintiff's complaint. Moreover, as the district court found, plaintiff has failed to allege sufficient facts to suspend the limitations period under a continuing violation theory.

### B. "Continuing Violation" Theory

■ To establish a continuing violation, plaintiff " 'must allege that a discriminatory act occurred or that a discriminatory policy existed' within the period prescribed by the statute." *Johnson v. General Elec.,* 840 F.2d 132, 137 (1st Cir.1988) (quoting *Velazquez v. Chardon,* 736 F.2d 831, 833 (1st Cir.1984)). There are two varieties of continuing violations: serial and systemic. *Kassaye v. Bryant College,* 999 F.2d 603, 606 (1st Cir. 1993). Serial violations are "composed of a number of discriminatory acts emanating from the same discriminatory animus, each act constituting a separate [actionable] wrong." *Jensen v. Frank,* 912 F.2d 517, 522 (1st Cir.1990). Plaintiff bears the burden of demonstrating that at least one discriminatory act occurred within the limitations period. *See id.; Mack v. Great Atl. and Pac. Tea Co.,* 871 F.2d 179, 183 (1st Cir.1989); *Velazquez,* 736 F.2d at 833. It is not enough to show that plaintiff is merely feeling the effects of some earlier discriminatory action. In other words, there is a "critical distinction between a continuing act and a singular act that brings continuing consequences in its roiled wake." *Johnson,* 943 F.2d at 108 (internal citations omitted); *see also Mack,* 871 F.2d at 182 ("In any such analysis, it is imperative that we distinguish between the occurrence of a discriminatory act and the later effects of that act."); *Goldman v. Sears, Roebuck & Co.,* 607 F.2d 1014, 1018 (1st Cir.1979) ("A continuing violation is not stated if all that appears from the complaint is that the plaintiff continues to suffer from the ongoing effects of some past act of discrimination."), *cert. denied,* 445 U.S. 929, 100 S.Ct. 1317, 63 L.Ed.2d 762 (1980). Systemic violations, on the other hand, "need not involve an identifiable discrete act of discrimination transpiring within the limitation period." *Jensen,* 912 F.2d at 523. Rather what must be shown is that plaintiff has been harmed by the application of a discriminatory *policy* or *practice* and that such policy continues into the limitations period. *Id.*

■ First, plaintiff has failed to show that any of the actions that allegedly occurred within the year prior to the filing of the complaint, i.e. Soto's (1) refusal, purportedly for reasons of building security, to give plaintiff new master keys to the Sports Complex, (2) opening of mail addressed to plaintiff, (3) hiring of a Sports Complex employee, and (4) representations that she was the Director of

the Sports Complex, constituted separate and actionable § 1983 violations.[4] Rather, these incidents are natural and foreseeable consequences of the 1990 merger (which made Soto responsible for the overall management of the Sport's Complex), and plaintiff's subsequent 47–day absence from work. *See generally Kassaye*, 999 F.2d at 603 (private college's request that professor vacate his office was merely an effect and not an independent incarnation of past alleged discriminatory refusal to grant tenure on basis of race); *De Leon Otero v. Rubero*, 820 F.2d 18, 20 (1st Cir.1987) (defendants' refusal to reinstate plaintiff "was not a separate act of discrimination, but rather a consequence of his initial demotion"); *Velazquez*, 736 F.2d at 833 (demotion followed by defendant's repeated refusals to reinstate plaintiff did not constitute a continuing violation).

Secondly, because plaintiff has failed to identify any discriminatory policy or practice in effect during the statutory period, he fares no better under the systemic violation theory. Instead of "alleg[ing] facts which would enable a jury to conclude that [he] had suffered from political discrimination in the year before [he] filed suit," *Velazquez*, 736 F.2d at 834, plaintiff has simply alleged that every time Soto carried out her position as supervisor, she resurrected a general political plot designed by defendants to harm and humiliate plaintiff. This is not enough.[5]

Plaintiff has failed to proffer any evidence that he was treated differently than members of parties other than the NPP.[6]

Because " 'the proper focus [in continuing violation analysis] is on the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful,' " *Mack* 871 F.2d at 182 (quoting *Chardon v. Fernandez*, 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981) (per curiam) (emphasis in original)), and because the allegedly discriminatory act here happened more than one year prior to the filing of the complaint, plaintiff's action is time-barred.

To the extent that plaintiff challenges other portions of the district court's ruling, "it does so in a perfunctory manner, without any attempt at developed argumentation". *Alan Corp. v. International Surplus Ins. Co.*, 22 F.3d 339, 343 (1st Cir.1994) (collecting cases). Such arguments are deemed waived. *Id.*

### IV.

### CONCLUSION

For the foregoing reasons, the judgment of the district court is

*Affirmed.*

---

4. Plaintiff has failed to refute any of the statements proffered by defendants in defense of their actions. For example, plaintiff has not contradicted Soto's sworn statement that she denied plaintiff (and others) master keys to the Sports Complex for security reasons, that she opened plaintiff's mail because he was absent from work, or that her assignment of plaintiff's duties mirrored his job description as set forth in his personnel form. Moreover, plaintiff alleged that Soto represented herself as the "Director" of the Sports Complex on letters dated December 4, 1991 and May 28, 1992. A review of the letters shows that Soto signed "Dr. Soto, Director." At the time Soto signed these letters, she *was* the Director of the Physical Education Department.

5. Plaintiff's evidence of discriminatory animus consists of the following:
   Close to the date in which Carlos Romero Barcelo lost the elections [November 1984], Dr. Karen Soto came to me and asked me what was I going to do now that the New Progressive Party had lost.

Plaintiff has neglected to show how this dated and inconclusive statement evidences a policy of discrimination which continued into the limitations period, or how it could support "a finding that [plaintiff was] treated differently than [he] would have been treated had [he] belonged to [defendants'] political part[ies]." *Id.* at 836.

6. Plaintiff further contends that because the original reorganization was illegal, any fallout from the merger constituted an independent act of demotion. We are not persuaded. Under plaintiff's novel theory, any demoted employee with a potential cause of action could wait an indefinite period of time before bringing a § 1983 action because every day s/he went to work, s/he was affected. This is absurd. Statute of limitations are designed to keep stale claims out of court. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380, 102 S.Ct. 1114, 1125, 71 L.Ed.2d 214 (1982). Plaintiff's interpretation of the continuing violation theory would reduce this purpose to a nullity.