Gants, J.
The plaintiff, Edna Loide Tavares De Almeida (“De Almeida”) has filed suit against the defendant, The Children’s Museum (“Museum”), her former employer, alleging that from the summer of 1992 and continuing until December 10, 1994 she was sexually harassed by a Museum supervisor. The Museum now moves to dismiss the complaint on the grounds that De Almeida failed timely both to file her charge with the Massachusetts Commission against Discrimination (“MCAD”) and to file her complaint in Superior Court. For the reasons stated below, the defendant’s motion to dismiss is ALLOWED.
BACKGROUND
When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court must accept as true the factual allegations of the complaint and all reasonable inferences favorable to the plaintiffs which can be drawn from those allegations. Fairneny v. Savogran, Co., 422 Mass. 469, 470 (1996); Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). The issue is whether the facts alleged, generously construed in favor of the plaintiffs, state a valid legal claim that would warrant relief on any theory of law. Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979).
According to her complaint and related documents,[1] De Almeida was employed at the Museum intermittently from January 1990 until January 13, 1995. Beginning in the summer of 1992, De Almeida’s supervisor, Clarence Cummins (“Cummins”), sexually harassed her by asking her to have his babies, stating to her and her co-workers his desire to have sex with her, leering at her body, and looking at her in a threatening and intimidating manner. That summer, Cummins conditioned De Almeida’s receipt of an appointment as a full-time Visitor Services Supervisor on his receipt of sexual favors and, when she refused, Cummins reneged on his promise to appoint De Al-meida to this position. De Almeida brought her complaints to the attention of the Museum, and in December 1992 it conducted an investigation of her allegations.
In April 1993, the Museum concluded its investigation. According to De Almeida, the Museum found that Cummins had sexually harassed her but the Museum did not discipline him.[2] By April 1993, De Almeida was no longer supervised by Cummins and never returned to his supervision.
De Almeida attempted to avoid Cummins but ran into him on at least four occasions between April 1993 and December 10, 1994. During the first three encounters, no words were spoken but Cummins allegedly looked at her “in a hateful, threatening manner.” The final encounter, which occurred on December 10, 1994, was described by De Almeida as the most traumatic. She had just finished the breakfast for those children who had slept overnight at the Museum and was on the Museum’s boardwalk at around 8:30 a.m. on her way to supervise an activity with the “Overnighters.” According to De Almeida:
Mr. Cummins and I met face-to-face. He was with a tall, thin man. Mr Cummins stood in front of me motionless. He stared at me with piercing eyes and *166 a stone face. His face exuded hate. A sense of panic overcame me. I ran to the bathroom to vomit.
De Almeida told her supervisor, Sylvia Sawin, about this incident and said she could not continue working at the Museum because of her fear of Cummins. Sawin told De Almeida she would speak with the Museum’s Human Resources Department to see what could be done. On January 13, 1995, Sawin told De Almeida that Human Resources said there was nothing they could do. That day, De Almeida left her position at the Museum. She claims she was constructively discharged from her employment because of the hostile work environment Cummins had created and the Museum had condoned by failing to take corrective action.
On February 3, 1995, De Almeida filed a charge of discrimination with the MCAD and the Equal Employment Opportunity Commission. On March 6, 1997, she filed suit in the United States District Court for the District of Massachusetts, alleging claims under both federal and state law arising from the alleged sexual harassment. On November 30, 1998, United States District Judge Robert E. Keeton dismissed the federal discrimination claims on statute of limitations grounds. Tavares de De Almeida v. Children’s Museum, 28 F.Sup.2d 682 (D.Mass. 1998). On January 27, 1999, he issued a Final Judgment dismissing all state law claims without prejudice “because in the exercise of discretion this court declines to continue to exercise supplemental jurisdiction over them now that all federal-law claims have been dismissed with prejudice.” On February 26, 1999, De Almeida filed her complaint in Massachusetts Superior Court, alleging sex discrimination in violation of G.L.c. 15IB and a violation of her right to be free from sexual harassment under G.L.c. 214, §1C.
DISCUSSION
A complaint alleging sex discrimination must be filed with the MCAD “within six months after the alleged act of discrimination.” G.L.c. 151B, §5. See Lynn Teachers Union, Local 137, AFT, AFL-CIO v. Massachusetts Commission against Discrimination (“Lynn Teachers Union’’), 406 Mass. 515, 520 (1990). However, pursuant to state regulations, “the six-month requirement shall not be a bar to filing in those instances where facts are alleged which indicate that the unlawful conduct complained of is of a continuing nature.” 804 C.M.R. §1.03(2) (1986).
Here, there is no dispute that:
De Almeida complained to the Museum about Cummins’ alleged sexual harassment in 1992,
the Museum investigated her allegations through April 1993, after April 1993, De Almeida was never again supervised by Cummins, and
De Almeida filed her sexual harassment claim with the MCAD on February 3, 1995.
De Almeida contends that her state law claims are not barred by the six-month statute of limitations because Cummins’ sexual harassment was of a continuing nature and continued until December 10, 1994, when she encountered him on the Museum’s boardwalk, and that she filed her claim with the MCAD less than two months after this incident.
The Museum contends that the six-month statute of limitations does indeed bar De Almeida’s state law claims because the December 10, 1994 incident, standing alone, would not support a claim of discrimination. This Court agrees that, even if Cummins did stand in front of De Almeida and stare at her “with piercing eyes and a stone face,” with his face “exud[ing] hate,” this conduct, standing alone, would not be enough to permit a finding that the Museum had subjected De Almeida “to unsolicited harassment of a sexual nature . . . that .■ . . was of such a nature that it would make the plaintiffs [employment] significantly less desirable to a reasonable person in the plaintiffs position.” Gnerre v. Massachusetts Commission Against Discrimination, 402 Mass. 502, 506-07 (1988). While one act might be enough to constitute an actionable claim of sexual harassment, id. at 508, this alleged act falls well short of that mark. See Bain v. Springfield, 424 Mass. 758, 766 (1997) (“That the mayor acted coldly toward her at a meeting immediately after she had made serious charges against him or that his ‘body language’ betokened hostility to her . . . are the kind of subjective and intangible impressions that must not be considered in making out a case under [G.L.c. 15IB]”). However, where hostile environment sexual harassment is alleged, as it is here, the totality of the defendant’s conduct must be evaluated, not simply individual acts viewed in isolation, since it is the cumulative effect of the defendant’s conduct that creates the hostile work environment. Ruffino v. State Street Bank and Trust Company, 908 F.Sup. 1019, 1038 (D.Mass. 1995). “Accordingly, when a plaintiffs hostile environment claim is challenged on a statute of limitations ground, specific incidents within the statutory period cannot be examined in isolation. Instead, such evidence must be considered in light of other factual allegations extending outside of the filing period. These discriminatory acts, taken together, must be examined to determine whether their cumulative effect created a hostile work environment for the plaintiff, during the relevant limitations period.” Id. at 1039.
The hostile work environment cannot have been solely the result of the residual effects of past discrimination. Id. at 1038. See also Provencher v. CVS Pharmacy, Division of Melville Corp., 145 F.3d 5, 14 (1stCir. 1998). In other words, De Almeida cannot claim that she suffered from a hostile work environment after August 3, 1994 (the date six months before she filed her claim with the MCAD on February 3, 1995) simply because she remembered and suffered ill effects from the defendant’s conduct before August 3, 1994. There *167 must be at least one act of sexual harassment after August 3, 1994 that, although not necessarily sufficient by itself to support a claim of sexual harassment, is substantially related to the earlier conduct and substantially contributed to the continuation of a hostile work environment, such that it anchors the totality of that related sexual harassment within the limitations period. Susan Janovich-Earle v. Integrity International Security Services, Inc. and Patrick J. Carter, Civ. A. No. 97-03702 (Mass.Sup.Ct. August 3, 1999) (Kottmyer, J.). See also Sabree v. United Brotherhood of Carpenters and Joiners, Local 33, 921 F.2d 396, 402 (1st Cir. 1990). The December 10, 1994 hostile stare, as a matter of law, is not so substantially related to the earlier alleged acts of sexual harassment that it may be considered anchoring conduct “of a continuing nature.”
It is difficult to define precisely what it means for conduct within the limitations period to be substantially related to conduct outside that period. The First Circuit, in evaluating federal sexual harassment claims, has required that the timely acts be “linked to the untimely acts by similarity, repetition or continuity.” Provencher v. CVS Pharmacy, Division of Melville Corp., 145 F.3d at 15. Under that standard, the hostile stare cannot be found to be substantially related to the earlier sexual harassment. Here, the most that plaintiff has alleged is that, after she complained to her employer about Cummins’ sexual harassment and triggered an internal investigation of his conduct, he gave her hateful looks when he saw her. These hateful looks were not at all similar to the conduct that she initially complained about. They occurred only sporadically, when the plaintiff happened to walk by Cummins. Moreover, they lacked continuity with the earlier acts of harassment because the earlier acts allegedly occurred when Cummins was her supervisor, and the hateful looks occurred when he was no longer her supervisor. Indeed, if these allegations were sufficient to breathe new life to allegations of sexual harassment that were more than two years old, then the six-month statute of limitations for these claims will have virtually no meaning, because almost any subsequent interaction between the alleged harasser and the victim could start the six-month clock running anew.
This Court may have looked at these allegations differently if the Museum had left Cummins as De Almeida’s supervisor. Then, those so-called hateful looks could have far greater significance, because they might reflect the animosity that a superior feels towards a subordinate and may properly raise a concern that the superior will act on his animosity to make his subordinate’s work life miserable. In that context, there may very well have been the substantial relatedness needed to link those dark stares to the earlier sexual harassment that triggered her complaint to the Museum and the Museum’s subsequent internal investigation. Having removed De Almeida from Cummins’ supervision, these dark stares reasonably reflect, at most, the antagonism of one fellow employee to another.
Pragmatically, this interpretation of conduct “of a continuing nature” means that, when an employer removes the harassed employee from the supervision of her alleged harasser, it is far more likely to obtain legal closure of any sexual harassment claim. While this Court is not declaring any hard and fast rule that conduct may never be “of a continuing nature” after the employment relationship between the victim and the alleged harasser has changed, it is sensible to consider such a change an important factor in interpreting when more recent conduct may anchor a claim that includes time-barred conduct. Doing so reflects the purpose and spirit of the MCAD regulation, and provides the clearest possible guidance to responsible employers who are trying to resolve with finality internal allegations of sexual harassment.
Since Cummins’ alleged hateful look of December 10, 1994 is not so substantially related to his earlier sexual harassment as to permit that timely act to anchor the earlier, otherwise time-barred conduct, and since that hateful look, standing alone, is insufficient as a matter of law to support a sexual harassment claim under G.L.c. 151B, Count One of the complaint must be dismissed.
Count Two, alleging sexual harassment under G.L.c. 214, §1C, must also be dismissed. There is no dispute that G.L.c. 15 IB applies to these allegations and that the Museum has six or more employees. Where G.L.c. 15 IB applies, it provides the exclusive remedy for the discriminatory conduct it prohibits. Guzman v. Lowinger, 422 Mass. 570, 572 (1996) (“G.L.c. 15 IB provides an exclusive remedy for sexual harassment claims against employers with six or more employees”).
I note that this Court expressly does not rest its dismissal of this complaint on the ground that the plaintiff was or should have been aware that she was a victim of sex discrimination more than six months before she filed her MCAD complaint. This Court recognizes that, in evaluating a sexual harassment continuing violation claim under federal discrimination law, the First Circuit has declared, “Even where a plaintiff alleges a violation within the appropriate statute of limitations period, the continuing violation claim will fail if the plaintiff was or should have been aware that he was being unlawfully discriminated against while the earlier acts, now untimely, were taking place.” Provencher v. CVS Pharmacy, Division of Melville Corp., 145 F.3d at 14. See also Sabree v. United Brotherhood of Carpenters and Joiners, Local 33, 921 F.2d at 401-02. That standard was premised on the First Circuit’s understanding that the rationale behind the continuing violation doctrine was “. . .to permit the inclusion of acts whose character as discrimina *168 tory acts was not apparent at the time they occurred.” Provencher v. CVS Pharmacy, Division of Melville Corp., 145 F.3d at 15 quoting Speer v. Rand McNally & Co., 123 F.3d 658, 663 (7th Cir. 1997). The consequence of this interpretation of the continuing violation doctrine is that, once a victim knows she is being sexually harassed, the six month limitations clock starts running, and she will not be able to complain about this conduct if she fails to file her complaint with the MCAD within the six months. Indeed, the First Circuit has reasoned “that a knowing plaintiff has an obligation to file promptly or lose his claim.” Provencher v. CVS Pharmacy, Division of Melville Corp., 145 F.3d at 14-15.
This Court does not believe that the Supreme Judicial Court will adopt the Provencher standard, applicable to federal discrimination claims, in interpreting Massachusetts’ continuing violation doctrine in hostile environment sexual harassment cases. See Lynn Teachers Union, 406 Mass. 515, 521 n. 7 (1990) (the Supreme Judicial Court may consider analogous federal discrimination statutes for purposes of interpretation, but it is not bound by interpretations of the federal statute in construing our state statute).
Hostile environment cases are more analogous to corrosion than explosion; this type of discrimination results from the cumulation of many acts and failures to act, some too small to complain about in isolation, that viewed in their totality create a hostile work environment. See Ruffino v. State Street Bank and Trust Company, 908 F.Sup. at 1038 (“hostile environment discrimination typically is not confined to one act, directed at one individual, at one time; rather, it is a composite of workplace action and inaction”). Under the federal standard, if a plaintiff does not file with the MCAD within six months of her first realizing that the totality of this conduct has reached the level of creating a hostile work environment, she loses her ability to allege this misconduct. If the misconduct continues and she flies a sexual harassment claim alleging a hostile work environment, the scope of the allegations would be limited to those that occurred within the past six months, even if this misconduct, by itself, is insufficient to support a hostile environment claim. Consequently, the federal standard would not permit the MCAD or the court to consider the totality of continuing conduct in determining whether the plaintiff has suffered discrimination and in fashioning a remedy for that unlawful discrimination.
In addition, the federal standard provides a strong incentive for a victim of sexual harassment to bring her claim when she first realizes that she has been discriminated against. If she waits six months to see if the harassment will stop, or to work with her employer to stop it, or to learn whether the harassment will deteriorate from bad to intolerable, she will lose her ability to allege the earlier misconduct. This is not fair to the victimized employee, because it forces her prematurely to choose litigation as her remedy. Nor is it sensible for the responsible employer who wants to resolve any harassment allegations short of litigation.
As a result, the federal standard is not in keeping with the purpose and spirit of Massachusetts’ continuing violation doctrine, which is to permit the MCAD or the court “to remedy ongoing discriminatory policies.” Lynn Teachers Union, 406 Mass. at 520, quoting Rock v. Massachusetts Commission Against Discrimination, 384 Mass. 198, 207 (1981). That purpose cannot be accomplished unless the factfinder is permitted to examine continuing conduct in its totality and not be limited to the portion of the continuing conduct that occurred in the six months before the MCAD filing. See Lynn Teachers Union, 406 Mass. at 521 n. 7 (declining to follow the United States Supreme Court’s reasoning regarding continuing violations because it was “unduly restrictive of an administrative agency’s ability to punish discriminatory acts”).
ORDER
For the reasons stated above, the defendant Museum’s motion to dismiss the complaint in its entirety is ALLOWED.

De Almeida’s Superior Court complaint makes reference to the complaint she filed in United States District Court for the District of Massachusetts on March 6, 1997. Therefore, this Court will consider the allegations made in that complaint without converting this motion to one for summary judgment. See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) (court may consider “documents sufficiently referred to in the complaint" in deciding motion to dismiss without converting motion into one for summary judgment); Henson v. CSC Credit Services, 29 F.3d 280, 284 (7th Cir. 1994) (court may consider public court documents filed in earlier action in deciding motion to dismiss without converting motion into one for summary judgment).
In addition, De Almeida has filed with her opposition to this motion her affidavit dated August 26, 1998, which was filed in that United States District Court action, and has referred repeatedly to that affidavit in her statement of the facts of this case. Since this affidavit was furnished by the plaintiff, is central to her claim, and its authenticity is not in dispute, this Court will also consider the assertions in this affidavit as if they were specific allegations in the complaint, without converting this motion into one for summary judgment. See Watterson v. Page, 987 F.2d at 3-4 (courts may consider “documents the authenticity of which are not disputed by the parties” and “documents central to plaintiffs’ claim” in deciding motion to dismiss without converting motion into one for summary judgment). Since the plaintiff introduced this affidavit to defeat the motion to dismiss, she is not prejudiced by this court considering it as part of the pleadings in this case. Id.

While this Court must accept the plaintiffs allegations as true for purposes of this motion, it should be noted that the Museum contends that it did not find sexual harassment but simply “inappropriate behavior" by Cummins that warranted a written reprimand, additional formal supervision of him, and a warning that he would be placed on probation if he did not make marked improvements.