Belknap,
No. 6037.

GERALD HICKOX

*v.*

J. B. MORIN AGENCY, INC. & *a.*

October 30, 1970.

*Wiggin, Nourie, Sundeen, Pingree & Bigg* and *John R. Falby, Jr.* ( *Mr. Falby* orally ), for the plaintiff.

*Snierson, Chandler & Copithorne* and *Richard P. Brouillard* ( *Mr. Bernard I. Snierson* orally ), for the defendants.

GRIFFITH, J. Plaintiff brought suit against the defendants seeking damages on four counts: ( 1 ) false arrest or imprisonment, ( 2 ) malicious prosecution, ( 3 ) debt for $500, ( 4 ) slander. The Trial Court ( *Dunfey,* J. ) directed a verdict for the plaintiff on the count for false arrest or imprisonment. The jury assessed damages for false arrest in the amount of $10,000 and

returned a verdict for the defendants on the three other counts. Exceptions of the defendants in the false arrest count and of the plaintiff in the malicious prosecution count were reserved and transferred by the trial court.

In 1962 the plaintiff, Gerald Hickox, opened a trailer park on Lake Winnisquam in Belmont, New Hampshire where he also sold mobile homes. The business was operated by a corporation named Sandy Beach, Inc., of which the plaintiff was president, treasurer, and sole stockholder. Hickox immediately became a substantial customer of the defendants' insurance agency which the two defendants operated as a partnership until 1965, when they incorporated the business as J. B. Morin Agency, Inc.

In 1964, the plaintiff's account was in arrears in the amount of $5,400 and he was in financial difficulties. In spite of substantial payments during the winter of 1964-1965, the account was still in arrears in the spring of 1965, when plaintiff's financial condition became acute. During that time several attachments were made on the real estate and stock in trade of the corporation. They included an attachment by the plaintiff's father in the amount of $30,000 and two attachments by New Hampshire Finance Corp. for $150,000 and $75,000. In May of 1965, the New Hampshire Finance Corp. repossessed and sold at a lienholder's sale forty-eight of plaintiff's trailers.

Defendants pressed plaintiff for payment on the insurance account and on May 20, 1965, plaintiff gave them a thirty-day promissory note secured by a mortgage on an unencumbered 1965 Wolverine Mobile Home. The actions of the defendants when this note was not paid at maturity gave rise to the present actions for false arrest and imprisonment.

The defendants placed the chattel mortgage in the hands of their attorney, Richard P. Brouillard, for repossession and foreclosure. At that time Attorney Brouillard was the County Attorney for Belknap County responsible for prosecution of criminal cases in that county. A trailer company named Lily Pond Trailer Sales, Inc. was engaged to repossess the mortgaged trailer in July, and James Annis of that company went to Sandy Beach park for that purpose but was unable to locate the trailer. There was testimony that visits by Attorney Brouillard and Fernand Morin, and later by James Annis and Fernand Morin, to the Sandy Beach Park were unsuccessful in finding the

trailer and that the plaintiff refused to disclose its whereabouts. Defendants testified that during this period they also visited Red Wing Trailer Park in Tilton where the trailer had been stored for a period by the plaintiff to avoid attachment.

On July 17, 1965, defendants notified Attorney Brouillard to proceed with a complaint previously drawn by the attorney and sworn to by Fernand Morin charging concealment of the trailer with intent to place it beyond the control of the mortgagee. Plaintiff was arrested by officers at his home at Sandy Beach Trailer Park on Saturday evening July 17, 1965, during a family cookout. He posted bail with the officers in the amount of $500 by means of a check given him by his mother. The complaint was later nol prossed by authority of defendants' attorney. Both defendants testified that their sole purpose in bringing the criminal complaint was to obtain the trailer. On July 20, 1965, the trailer was located at Sandy Beach Park where plaintiff testified it had been during all of the attempts to locate it.

Defendants excepted to the directing of a verdict for the plaintiff on the count in false arrest and imprisonment and to the denial of their motion to set aside the verdict on this count. In order that the directed verdict for false arrest be viewed in its proper perspective it is necessary to detail the astonishing procedure by which plaintiff's false arrest case developed. Like Topsy it was never born but just " grow'd. "

The original writ contained a count in false arrest and one in malicious prosecution. Both alleged that the complaint was issued maliciously and without probable cause and claimed damages in the amount of $100,000. At the pretrial the principal issue stated was whether the defendants as complainants in the criminal action had probable cause to believe the mortgaged property was concealed. Subsequent to the pretrial the writ was amended to rely upon negligence in causing the false arrest without just cause, and malice in the malicious prosecution count. The damage claim in each count was reduced to $10,000; both counts relied upon the nol pros of the action and claimed the same elements of damages.

In his opening statement plaintiff's counsel referred to the two actions as interdependent and requiring the same proof of malice and lack of probable cause. On the second day of trial counsel for the plaintiff, during his examination of Attorney Brouillard, claimed that RSA 360:24, which made it a crime to conceal mortgaged property " with the intent of placing it beyond

the control of the mortgagee," was repealed by Laws of 1963, ch. 17:2. Although the complaint made no reference to a statute, it was couched in the language of RSA 360:24.

Later that same day the trial court informed counsel that from his research it appeared that plaintiff's counsel had relied upon the revision note in RSA 360:24 indicating its repeal, but that Laws of 1963, ch. 17:1 substituted for RSA 360:24 a new section (RSA 580:5-a (supp.)) which made it an offense maliciously or with intent to defraud to conceal mortgaged property. Counsel for the plaintiff agreed that the new statute applied and abandoned the claim that the complaint charged no crime.

On the fourth day of trial counsel for the plaintiff asked to be relieved of his agreement that the complaint charged no crime and defendants' counsel consented. Plaintiff then argued that the complaint charged defendant with an offense under the repealed statute (RSA 360:24) but not under the new RSA 580:5-a (supp.) where the offense is concealment "maliciously or with intent to defraud." The trial court accepted this argument that the new statute did not support the complaint and directed a verdict for the plaintiff on the count for false arrest.

As a result of research done by counsel in response to a question during oral argument in this court, it now appears that there may be evidence that no warrant was ever issued on the complaint and that the arrest was made without a warrant.

While the in-trial creation of the plaintiff's case for false arrest in this case may indicate a need for more effective pretrials, it is permissible under our practice. We have detailed the procedure here to show how the two torts of false arrest and malicious prosecution originally assumed by counsel to contain the same elements and to call for the same damages suddenly on the fourth day of trial were found to require entirely different elements and to call for different damages. Part of the difficulties in these cases arises from the initial confusion of false imprisonment and malicious prosecution and the failure of final separation when the cases were submitted to the jury. *Montgomery Ward Co.* v. *Freeman,* 199 F.2d 720 (4th Cir. 1952); *Aldridge* v. *Fox,* 384 Ill. App. 96, 108 N.E.2d 139 (1952).

While "false imprisonment" is often spoken of as "false arrest" without violence to the definition of the tort (Harper, Malicious Prosecution, False Imprisonment and Defamation, 15 Texas L. Rev. 157 (1937) ) the false imprisonment and ma-

licious prosecution are two distinct torts. 1 Harper and James, Torts *s.* 3.9 ( 1956 ); Satter and Kalom, False Arrest: Compensation and Deterrence, 43 Conn. B.J. 598, 608 ( 1969 ). False imprisonment is the unlawful restraint of an individual's personal freedom. 35 C.J.S. False Imprisonment *s.* 1, at 621 ( 1960 ); Restatement, Second, Torts *s.* 35 ( 1965 ); Prosser, Torts *s.* 12, at 54 ( 3d ed. 1964 ). Malicious prosecution is the institution of criminal proceedings by valid process of law but with malice and without probable cause. Prosser, Torts 61 ( 3d ed. 1964 ). The distinction between the two torts has always been recognized in this state. *Blenn* v. *Morrill,* 90 N.H. 109, 5 A.2d 42 ( 1939 ); *Ferry* v. *Ferry,* 94 N.H. 395, 397, 54 A.2d 151, 153 ( 1947 ).

The claim of false imprisonment until the fourth day of trial relied upon allegations of malice, want of probable cause and dismissal of the prosecution. These were all elements of malicious prosecution, but not of false imprisonment or false arrest. Annot., 19 A.L.R. 671 ( 1951 ); 43 Conn. B. J. 598, 602 ( 1969 ); *Ferry* v. *Ferry, supra* at 397, 54 A.2d at 153 ( 1947 ); Restatement, Second, Torts *ss.* 35, 41 ( 1965 ). While some courts disregard the distinctions between the two torts and permit maintenance of both actions on essentially the same allegations ( *Shelton* v. *Barry,* 328 Ill. App. 497, 66 N.E.2d 697 ( 1946 ); *Thomas* v. *F. & R. Lazarus & Co.,* 57 N.E.2d 103 ( Ohio Ct. App. 1941 ) such joinder often makes for confusion. *See Montgomery Ward & Co.* v. *Freeman,* 199 F.2d 720 ( 4th Cir. 1952 ); *Aldridge* v. *Fox,* 384 Ill. App. 96, 108 N.E.2d 139 ( 1952 ).

When the plaintiff was relying, as he stated in his opening statement, upon malice and want of probable cause in both actions, the count in false imprisonment was an unnecessary addition. The final development of the case however resulted in a true claim of the tort of false imprisonment, *i.e.* the detention of the plaintiff by an invalid arrest caused by the defendants. *Pike* v. *Hanson,* 9 N.H. 491 ( 1838 ).

The complaint on which the plaintiff was arrested made no reference to any statute but charged concealment of the mortgaged mobile home "with intent of placing the trailer beyond the control of the mortgagee." This is the precise language of RSA 360:24 prior to the amendment of 1963 which became RSA 580:5-a ( supp. ). At the time the complaint was brought,

RSA 580:5-a (supp.) was in effect and defendants argue that the complaint fairly charged a violation of that statute. The language in RSA 580:5-a (supp.) that the complaint could relate to is that making it an offense to conceal mortgaged chattels "maliciously or with intent to defraud."

The court and counsel in considering the validity of the complaint to support a warrant for arrest treated it as though it were being directly challenged in a criminal trial. *See State* v. *Piper,* 73 N.H. 226, 60 A. 742 (1905); *State* v. *Moore,* 93 N.H. 169, 37 A.2d 15 (1944); *State* v. *Harvey,* 108 N.H. 139, 229 A.2d 176 (1967). However, the attack upon the validity of the complaint here was collateral and "unless it appear on the face of it to be an absolute nullity, [it] cannot be called in question collaterally, until it has been vacated or set aside by the court . . ." *Blanchard* v. *Goss,* 2 N.H. 491, 494 (1822); *Keniston* v. *Little,* 30 N.H. 318, 324 (1855); *Broad & Lackawanna Realty Co.* v. *Breitung,* 239 N.Y. 154, 145 N.E. 915 (1924); Harper, Malicious Prosecution, False Imprisonment and Defamation, 15 Texas L. Rev. 157, 175 (1937). We are of the opinion that for the purposes of the present action the complaint was sufficient to charge the plaintiff with a violation of RSA 580:5-a (supp.). It follows then that the arrest could not be ruled false because of the alleged deficiencies in the complaint. The present claim that the arrest was warrantless was not part of the evidence at the trial and it cannot aid the plaintiff here. The verdict was erroneously directed for the plaintiff on the false arrest count and since from the evidence at the trial it appears the arrest was made upon a valid complaint the defendants' exception to the denial of their motion for a directed verdict for the defendants on this count is sustained.

Even if the trial court had properly directed a verdict for the plaintiff in the false imprisonment count it would have to be set aside for the same reasons that require a new trial for the plaintiff in the malicious prosecution count. The commingling of evidence relating to the two torts and the charge on damages erroneously permitted their consideration on the false imprisonment count of all of the damages the plaintiff could have recovered in the malicious prosecution count. *Gibbs* v. *Randlett,* 58 N.H. 407, 408 (1878); *McGrath* v. *Keenan,* 46 A.2d 725, 727 (N.J. C.P. 1946).

In *Montgomery Ward & Co.* v. *Freeman,* 199 F.2d 720 ( 4th Cir. 1952 ), where plaintiff was required to elect between false imprisonment and malicious prosecution and elected false imprisonment the court said, "In the present case the election to restrict the action to false imprisonment after evidence of the actions of the police officers at the police station and evidence of the plaintiff's acquittal, which was germane only to the claim for malicious prosecution, had been received, resulted in a verdict that was grossly excessive when considered as compensation for the brief detention of the plaintiff in the defendant's store . . . ." *Id.* at 724. *See Ira* v. *Columbia Food Co.,* 226 Ore. 566, 360 P.2d 622 ( 1961 ).

In the present case the jury having been permitted to assess all of the damages in the malicious prosecution count in the directed verdict for false imprisonment, had no occasion to consider the liability of the defendants for malicious prosecution. The considerations that would not permit a verdict on damages to stand in the false imprisonment count require a new trial on liability in the malicious prosecution count. The developments of the trial of the two torts here resulted in such confusion of the separate elements of damages and liability peculiar to each tort as to vitiate both verdicts. *See Montgomery Ward & Co.* v. *Freeman supra; Ira* v. *Columbia Food Co. supra.*

> *Defendants' and plaintiff's exceptions sustained, in part; new trial on malicious prosecution count; judgment for defendants on remaining counts.*

All concurred.