# United States Court of Appeals
## For the First Circuit

No. 04-2251

MICHAEL FORGIE-BUCCIONI,

Plaintiff, Appellee,

v.

HANNAFORD BROTHERS, INC.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. James R. Muirhead, U.S. Magistrate Judge]

Before

Selya, Circuit Judge,
Baldock,[*] Senior Circuit Judge,
and Howard, Circuit Judge.

William B. Pribis for appellant.

Steven M. Latici for appellee.

July 1, 2005

---

[*] Of the Tenth Circuit Court of Appeals, sitting by designation.

**BALDOCK, <u>Senior Circuit Judge</u>**.  This diversity action arises out of the arrest of Plaintiff Michael Forgie-Buccioni for shoplifting.  After his criminal case was dismissed, Plaintiff sued Defendant Hannaford Brothers, Inc. alleging false imprisonment, false arrest, malicious prosecution, and defamation.  After a three day trial, the jury returned a general verdict in favor of Plaintiff and awarded him $100,000 in damages.  Defendant appeals, arguing that the district court: (1) erroneously instructed the jury on false arrest under New Hampshire law; (2) erred in denying it judgment as a matter of law on Plaintiff's false imprisonment claim; (3) erred in denying it judgment as a matter of law on Plaintiff's malicious prosecution claim; and (4) erred in denying its motion for remittitur.[1]  We have jurisdiction, 28 U.S.C. § 1291, and affirm.

## I.

The evidence presented at trial, viewed in a light most favorable to the jury verdict, demonstrated the following: Plaintiff and his companion, Lara McRuer, went shopping at Defendant's grocery store on the evening of July 30, 2001.  Louis Frender, the store's night manager, saw Plaintiff and McRuer in the store and immediately began videotaping them with the store's security system.  Frender knew Plaintiff from a previous dispute over video rental privileges at the store.

---

[1] Defendant does not appeal the jury's verdict on defamation.

Plaintiff and McRuer completed shopping and paid for their groceries. McRuer put the receipt in her wallet. Upon leaving the store, however, Plaintiff and McRuer realized they had purchased the wrong type of Drixoral (a cold and sinus medication). Plaintiff returned to the store to exchange the Drixoral. Upon reentering the store, Plaintiff testified that he informed a store clerk of his intent to exchange the Drixoral. Plaintiff left the Drixoral at a vacant checkout counter. He returned to the drug aisle and obtained a different type of Drixoral. Plaintiff also grabbed some bottled water. He then proceeded to a checkout register, told a different clerk he already had paid for the Drixoral, paid for the water, and left the grocery store.

Meanwhile, Frender asked the clerk who checked Plaintiff out the second time whether Plaintiff had paid for the Drixoral. The clerk said no. Frender pursued Plaintiff outside the store. Frender apprehended Plaintiff in the parking lot and asked him to return to the store. Plaintiff complied. Frender and another store employee escorted Plaintiff to the store's security room and began questioning him about the Drixoral.

Frender subsequently called the Franklin Police Department. Officer Scott Tompkins responded. Frender showed Officer Tompkins the portion of the surveillance videotape beginning when Plaintiff reentered the store and left without paying for the second box of Drixoral. Officer Tompkins contacted

-3-

McRuer, who informed him that Plaintiff simply wanted to exchange the Drixoral. Officer Tompkins nevertheless arrested Plaintiff for shoplifting. The State charged Plaintiff with shoplifting; however, a New Hampshire court later dismissed the criminal case. This suit followed.

II.

A.

First, Defendant argues the district court erroneously instructed the jury on false arrest because: (1) the court's false arrest instruction punishes citizens for reporting crimes in good faith if the arrest is later found to be technically unlawful; (2) the instruction negates the merchant's privilege; and (3) the court erroneously instructed the jury that Plaintiff's arrest was unlawful as a matter of law. Where, as here, abstract errors of law are claimed, we review jury instructions de novo. Goodman v. Bowdoin College, 380 F.3d 33, 47 (1st Cir. 2004). "An erroneous jury instruction warrants a new trial if the preserved error, based on a review of the entire record, can fairly be said to have prejudiced the objecting party." Id. (internal quotation and citation omitted). The district court's false arrest jury instruction stated in relevant part:

> False arrest is a form of false imprisonment. To be found liable on this claim, Hannaford Brothers, Inc. must have instigated or participated in the unlawful arrest of Mr. Forgie-Buccioni.

-4-

In the instance of an arrest without a warrant, the law of arrest determines whether the arrest was lawful. New Hampshire Revised Statutes Annotated ("RSA") 594:10 provides in relevant part that:

I. An arrest by a peace officer without a warrant on a charge of a misdemeanor or a violation is lawful whenever:

(a) He has probable cause to believe that the person to be arrested has committed a misdemeanor or violation in his presence;
. . .

If the arrest is unlawful under the law of arrest, the good faith of the instigator or participator, or his/her reasonable belief that the arrest is authorized or justified is not a defense. Probable cause is not a defense to an action for false imprisonment, if the arrest is otherwise unlawful. I instruct you that the arrest of Mr. Forgie-Buccioni by the Franklin Police was unlawful under the facts of this case. . . .

Instigation consists of words or acts which direct, request, invite or encourage the false imprisonment itself. . . . It is not enough for instigation that the actor has given information to the police about the commission of a crime, or has accused the other of committing it, so long as he leaves to the police the decision as to what shall be done about any request, without persuading or influencing them.

Therefore, the only issue for you to decide in this count is whether Hannaford Brothers, Inc. instigated or participated in the arrest. If it did you must find for the plaintiff on this count. If not then you must find for the defendant on this count.

We discuss and reject Defendant's three arguments in turn.

First, the instruction does not hold citizens who simply report crimes liable for an unlawful arrest. The district court expressly instructed the jury that it could only find false arrest if Defendant "instigated" or "participated" in the arrest. This

was a correct statement of law.  See Restatement (Second) of Torts § 45A; N.H. Civil Jury Instr. § 19.1, committee cmt.  To "instigate" or "participate," as the district court aptly explained, means more than "giv[ing] information to the police about the commission of a crime."  Restatement (Second) of Torts § 45A, cmt. c.  Instead, "[i]nstigation consists of words or acts which direct, request, invite or encourage the false imprisonment."  Id.; see also Harper, James, Gray The Law of Torts § 4.11, at 4:121-22 (3d ed. 1995) (explaining that while the mere giving of inaccurate information is not a basis for liability, a private citizen who knowingly conveys false information to the police may be held liable for a subsequent false arrest).  The jury found Defendant instigated and/or participated in Plaintiff's unlawful arrest if we presume (as we must) that it followed the court's instruction.  See Sheek v. Asia Badger, Inc., 235 F.3d 687, 698 (1st Cir. 2000).  Thus, the jury did not "punish" Defendant for reporting a crime in good faith nor did it find Defendant vicariously liable for the actions of the police.  To the contrary, the jury held Defendant liable and compensated Plaintiff for his injuries as a result of Defendant's independent tortious conduct; that is, for "persuading" or "influencing" Officer Tompkins in the decision to arrest Plaintiff.

Second, the false arrest instruction does not negate the merchant's privilege.  According to Defendant, the court's

instruction that "the good faith of the instigator or participator, or his/her reasonable belief

. . . is not a defense," conflicts with and negates the merchant's privilege, which permits a merchant to detain a customer if they have "reasonable grounds to believe" that a customer has shoplifted. N.H. Rev. Stat. Ann. § 627:8-a. The court's false arrest instruction, however, only references the "reasonable belief" and "good faith" of the instigator *if* "the arrest is unlawful." The court instructed the jury that as a matter of law, *the arrest was unlawful*. The disputed language, therefore, was entirely superfluous and the jury never had occasion to consider the language.[2] Further, the jury's verdict demonstrates, through a special interrogatory finding, that Frender was aware Plaintiff reentered the store carrying a box of Drixoral. The jury's finding undermines Defendant's contention that the jury would have applied the merchant's privilege. The finding clearly shows the jury determined Defendant did not have "reasonable grounds" to believe Plaintiff was shoplifting. N.H. Rev. Stat. Ann. § 627:8-a. Thus,

---

[2] Moreover, the district court correctly instructed the jury that the good faith intentions or reasonable belief of a defendant are irrelevant for purposes of false arrest. See Hickox v. J.B. Morin Agency, Inc., 272 A.2d 321, 324 (N.H. 1970); see also Restatement (Second) of Torts § 45A, cmt. d. (noting "the good faith of the instigator, or his reasonable belief that the arrest is authorized and justified, will not protect him"); see also N.H. Civil Jury Instr. § 19.1, committee cmt.

the jury had independent grounds to, and did, reject the merchant's privilege defense.

Third, the district court correctly instructed the jury that Plaintiff's arrest was unlawful as a matter of law. Officer Tompkins did not have probable cause to believe Plaintiff committed a misdemeanor *in his presence* as required under N.H. Rev. Stat. Ann. § 594:10(I)(a). Although Officer Tompkins watched a partial videotape of Plaintiff allegedly shoplifting, neither Officer Tompkins nor any other police officer *observed* Plaintiff shoplifting. See State v. Leary, 573 A.2d 135, 136 (N.H. 1990) (indicating that the "presence" requirement is met only when an officer, or a member of his law enforcement team, actually observes a misdemeanor occur); State v. Standish, 363 A.2d 404, 405 (N.H. 1976); see also Topp v. Wolkowski, 994 F.2d 45, 48-49 (1st Cir. 1993). Defendant fails to cite any New Hampshire law supporting its proposition that a videotape alone provides a sufficient basis to satisfy the "presence" requirement for warrantless arrests under § 594:10(I)(a). We are reluctant to engraft such an interpretation on § 594:10(I)(a) when the New Hampshire Supreme Court has interpreted the statute, quite logically, according to its plain language. See Gill v. Gulfstream Park Racing Ass'n, Inc., 399 F.3d 391, 402 (1st Cir. 2005) (noting "[a] federal court sitting in

diversity cannot be expected to create new doctrines expanding state law").[3]

The court's false arrest jury instruction does not warrant a new trial in this case. The jury instructions, as a whole, "adequately illuminate[d] the law applicable to the controlling issues" and did not mislead the jury. Levinsky's, Inc. v. Wal-Mart Stores, Inc., 127 F.3d 122, 135 (1st Cir. 1997). We thus proceed to Defendant's second alleged claim of error.

B.

Second, Defendant argues the district court erred in denying its motion for judgment as a matter of law on Plaintiff's false imprisonment claim. We review the denial of a motion for judgment as a matter of law *de novo*, taking the evidence in the light most favorable to Plaintiff. Currier v. United Tech. Corp., 393 F.3d 246, 254 (1st Cir. 2004). "We must affirm unless the evidence was so strongly and overwhelmingly inconsistent with the verdicts that no reasonable jury could have returned them." Id. (internal quotation omitted).

Under New Hampshire law, "[f]alse imprisonment is the unlawful restraint of an individual's personal freedom." Hickox v. J.B. Morin Agency, Inc., 272 A.2d 321, 323 (N.H. 1970)(citing Restatement (Second) of Torts § 35). The essential elements of

---

[3] Although § 594:10(I) contains two other subsections, Defendant does not argue the subsections apply and only relies upon subsection (a). We do the same.

-9-

false imprisonment are: (1) defendant acted with the intent to restrain or confine plaintiff within boundaries fixed by the defendant; (2) defendant's act directly or indirectly resulted in such restraint or confinement of plaintiff; and (3) plaintiff was conscious of and harmed by the restraint or confinement. N.H. Civ. Jury Instr. § 19.1; Restatement (Second) of Torts § 35. "[C]onfinement can be imposed by physical barriers or physical force." McCann v. Wal-Mart Stores, Inc., 210 F.3d 51, 53 (1st Cir. 2000) (citing Restatement (Second) of Torts § 40).

The district court did not err when it denied Defendant's motion for judgment as a matter of law on Plaintiff's false imprisonment claim. Drawing all reasonable inferences in Plaintiff's favor and assuming the jury resolved credibility issues consistent with the verdict, see id. at 54, a reasonable jury could have concluded: Defendant's employees intended to confine Plaintiff; Defendant's actions resulted in such confinement; and Plaintiff was aware of the confinement. Plaintiff testified that Frender escorted him back into Defendant's store with his hand on his arm. Although Plaintiff testified he voluntarily returned to the store, he later explained that he did not feel free to leave the store any time thereafter. Once inside the store, Frender "kept pushing" Plaintiff towards the store's security room. Plaintiff explained: "I wasn't free to leave, and I was being very matter of factly taken to the back of this area of the store

-10-

escorted by not one but two people." Frender sat Plaintiff in the back of the security room and a store employee sat next to Plaintiff "[t]he entire time." Thereafter, Plaintiff testified that when he had to use the restroom, Frender personally escorted him and stood outside the restroom door. Plaintiff again explained: "I was being detained. I wasn't free to leave." Plaintiff also explained that he waited thirty to forty minutes until Officer Tompkins arrived. While waiting, Plaintiff began to feel "shaky and nervous and lightheaded" due to his hypoglycemia. When McRuer returned to the store to check on Plaintiff, she was told that she could not see Plaintiff. Based upon this and other evidence in the record, a reasonable jury could have easily concluded that Defendant unlawfully restrained or confined Plaintiff.

### C.

Third, Defendant argues the district court erred in denying its motion for judgment as a matter of law on Plaintiff's malicious prosecution claim. Specifically, Defendant argues Frender had probable cause to believe Plaintiff was shoplifting. To succeed in an action for malicious prosecution under New Hampshire law, "the plaintiff must prove that he was subjected to a criminal prosecution [procured or] instituted by the defendant without probable cause and with malice, and that the criminal proceeding terminated in his favor." Stock v. Byers, 424 A.2d

-11-

1122, 1123 (N.H. 1980); see also N.H. Civil Jury Instr. § 21.1. "Probable cause in the malicious prosecution context has long been defined as such a state of facts . . . as would lead a man of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person arrested is guilty." Stock, 424 A.2d at 1123 (internal quotation omitted). Whether probable cause exists is a mixed question of law and fact; that is, the court must submit conflicting evidence proffered on the issue of probable cause to the jury and then determine, based upon the facts the jury found, the ultimate issue of whether probable cause exists. Id. at 1123-24.

In accordance with New Hampshire law, the district court correctly submitted a special "probable cause" interrogatory to the jury. The interrogatory asked the jury whether it found "by a preponderance of the evidence that Mr. Frender was aware that Mr. Forgie-Buccioni had a box of Drixoral with him when he returned to [Defendant's] store after shopping with his companion." The jury answered "yes." In affirmatively answering the court's question, the jury necessarily made credibility determinations and resolved conflicts in the testimony which we may not reconsider. See White v. New Hampshire Dep't of Corrections, 221 F.3d 254, 259 (1st Cir. 2000) (noting "we may not consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence.").

Further, the jury's factual findings foreclose Defendant's argument because Frender did not have probable cause to believe Plaintiff shoplifted if, as the jury found, Frender was aware Plaintiff returned to the store with a box of Drixoral. See Stock, 424 A.2d at 1123. The evidence supports the jury's finding. Frender videotaped Plaintiff's entire shopping trip. He observed Plaintiff and McRuer pay for their groceries and obtain a receipt. Frender then saw Plaintiff reenter the store. At this moment, according to the evidence and the jury's findings, Frender: (1) was aware Plaintiff had a box of Drixoral; (2) saw Plaintiff obtain a different kind of Drixoral; and (3) was informed Plaintiff claimed to have already paid for the Drixoral. Based upon this knowledge, Frender simply did not have an "honest and strong suspicion," id., Plaintiff was shoplifting when he contacted the Franklin Police Department and instigated criminal proceedings against Plaintiff. The district court, therefore, did not err in denying Defendant's motion for judgment as a matter of law on Plaintiff's malicious prosecution claim.

D.

Fourth, Defendant argues the district court erred when it denied its motion for remittitur. We review the district court's denial of remittitur for an abuse of discretion. Rivera Castillo v. Autokirey, Inc., 379 F.3d 4, 13 (1st Cir. 2004). To be entitled to remittitur, the party challenging the verdict must establish

that the damage award is grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit the award to stand. Havinga v. Crowley Towing & Transp. Co., 24 F.3d 1480, 1484 (1st Cir. 1994). "An appellate court's normal disinclination to second-guess a jury's evaluation of the proper amount of damages is magnified where . . . the damages entail a monetary valuation of intangible losses, and the trial judge, having seen and heard the witnesses at first hand, accepts the jury's appraisal." Correa v. Hospital San Francisco, 69 F.3d 1184, 1197 (1st Cir. 1995).

Based upon the evidence in the record, the jury's damage award of $100,000 is not so grossly excessive that justice would be denied if we permitted the award to stand. Evidence shows Plaintiff incurred legal fees of over $15,000 in defending against his criminal charges. Plaintiff also suffered several "intangible losses." Plaintiff testified, among other things, that he nearly suffered from hypoglycemic shock while detained in Defendant's store, was humiliated when escorted out of the store in handcuffs, and that the arrest affected his reputation. Furthermore, Plaintiff relocated to Florida shortly after his arrest and had to travel back to New Hampshire several times to defend against his criminal charges. We decline to second-guess the jury's evaluation of Plaintiff's losses. Further, the presiding judge, who saw and heard the witnesses first hand, specifically noted the "jury's

verdict, based upon my observation of the evidence and the knowledge and experience I gained in trying and settling similar cases while in private practice, is fair and reasonable." We respect the court's judgment. The district court did not abuse its discretion in denying Defendant's motion for remittitur.

AFFIRMED.