STATE OF MAINE
CUMBERLAND, SS.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-03-421

DONALD L. GARBRECHT
LAW LIBRARY

MAY 15 2007

SCOTT LIBERTY,
        Plaintiff

        v.

JEFFERY BENNETT and
THE BENNETT LAW FIRM
        Defendants and
        Third Party Plaintiffs

        v.

MICHAEL LIBERTY,
        Third Party Defendant

### DECISION AND ORDERS
### ON MOTIONS TO DISMISS

## I. BEFORE THE COURT

Defendants Jeffery Bennett and the Bennett Law Firm move to dismiss the complaint filed by plaintiff Scott Liberty.

Third-party defendant Michael Liberty moves to dismiss third party complaint filed by Bennett personally and the Bennett Law Firm.

Bennett and the firm move to amend the third-party complaint in the event the court grants the third-party motion to dismiss.

## II. PROCEDURAL BACKGROUND

On July 25, 2003 Scott Liberty filed a 13-count complaint against Jeffery Bennett and The Bennett Law Firm (collectively "Bennett").

This case and a series of other cases involving these parties have a long and tortured history that has consumed in inordinate amount of judicial resources well beyond any other litigation known to this court in the State of Maine.

On February 2, 2006, after a complex procedural history that included an appeal to the Law Court and a *Spickler* injunction, this court ordered Scott Liberty to review the July 25, 2003 complaint to confirm that it was properly pleaded and that the passage of time neither required the addition or deletion or amendment of any counts. Scott Liberty chose not to amend his complaint.

The case arises out of alleged threats, harassment, abuse, and theft by attorney Jeffery Bennett upon Scott Liberty. The complaint alleges that attorney Bennett's "conduct" commenced on or about March 23, 2000 when Bennett began his legal representation of Liberty's ex-wife, Darlene Cobb f/k/a Darlene Liberty.

The 13-count complaint contains the following causes of action:

Count I - abuse of process;

Count II - false imprisonment;

Count III - defamation;

Count IV - trespass;

Count V - conversion;

Count VI - assault;

Count VII - intentional infliction of emotional distress;

Count VIII - negligent infliction of emotion distress;

Count IX - interference with contractual relations;

Count X - negligence;

Count XI - negligent supervision;

Count XII - negligence—vicarious liability; and,

Count XIII - violation of the Maine Civil Rights Act, 5 M.R.S.A. § 4682.

Bennett moves to dismiss all counts.

Bennett has also filed filed an amended nine-count third-party complaint against Michael Liberty, Scott Liberty's uncle. This complaint alleges Michael Liberty retained Jeffery Bennett to represent Darlene Copp in a divorce action and related civil action against Scott Liberty. The complaint further claims that Michael withdrew from an agreement he executed with The Bennett Law Firm wherein he agreed to pay for the legal services The Bennett Law Firm provided to Darlene Copp. Finally, the complaint alleges that Michael, acting individually and in concert with Scott Liberty, has engaged in a campaign to cause emotional, professional, and physical harm to attorney Bennett and his family.

The third-party complaint contains the following causes of action:

Count I - contribution;

Count II - breach of contract;

Count III - breach of promissory note;

Count IV - quantum meruit;

Count V - intentional infliction of emotional distress;

Count VI - assault and battery;

Count VII - civil conspiracy; and,

Count VIII - punitive damages.

Michael Liberty moves to dismiss the third-party complaint. Bennett opposes the motion but also asks to amend the third-party complaint if the court intends to grant the Motion to Dismiss in full or in part.

### III. DISCUSSION

A motion to dismiss challenges the legal sufficiency of the complaint. *Vahlsing Christina Corp. v. Stanley*, 487 A.2d 264, 267 (Me. 1985). When reviewing a motion to dismiss based on a failure to state a claim upon which relief can be granted, M.R.Civ.P.

3

12(b)(6), this court examines the complaint "in the light most favorable to the plaintiff and accept[s] the material facts of the complaint as true." *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 7, 843 A.2d 43, 46. The court will grant a defendant's 12(b)(6) motion only if "it appears beyond doubt that a plaintiff is entitled to no relief under any set of facts that he might prove to support his claim." *Id.* (citations omitted).

## A. Defendants' Motion to Dismiss

### 1. Count I: Abuse of Process

In an interesting use of argument, the plaintiff readily concedes that Count I does not state a claim for abuse of process. Rather, he argues that although not denominated as such, Count I does state a claim for malicious prosecution and wrongful use of civil proceedings. In response, the defendants assert that the plaintiff's argument amounts to an unofficial amendment to the complaint, and the court should grant the motion to dismiss Count I on that basis alone.[1] Nevertheless, the defendants contend that the complaint does not state causes of action even for malicious prosecution and/or wrongful use of civil proceedings.

To succeed on a claim for malicious prosecution, the "plaintiff would have to prove not only that criminal proceedings were instituted against him without probable cause and with malice, but also show that he received a favorable termination of the proceedings." *Nadeau v. State*, 395 A.2d 107, 117 (Me. 1978). "Favorable adjudication of the claim by a competent tribunal, the withdrawal of the claim by the initial litigant, or the dismissal of the claim" represent favorable termination of the proceedings as a matter of law. *Pepperell Trust Co. v. Mountain Heir Fin. Corp.*, 1998 ME 46, ¶ 18, 708 A.2d 651, 656.

---

[1] Although Liberty clearly demarked count I "abuse of process," it is possible to read count I as alleging a cause of action for malicious prosecution and wrongful use of civil proceedings.

4

According to the plaintiff, three incidents demonstrate malicious prosecution. In the first incident, attorney Bennett, allegedly relying on an expert retained by him that had not seen Liberty, caused Liberty to be arrested for violating his probation by taking anabolic steroids. Complaint ¶¶ 80, 82. Liberty later tested negative for steroids, was released from jail and the State dismissed the charges. Complaint ¶¶ 96-98.

The second incident allegedly occurred when Bennett sought criminal charges against Liberty for terrorizing. Complaint ¶ 101. The district attorney's office never approved prosecution for the charges, concluding to do so would be "unethical irresponsible and a total breach of public duty." Complaint ¶ 102-103.

Finally, Liberty alleges that Bennett arranged for Liberty to be charged with violating the terms of his probation by threatening Bennett with a series of telephone calls. Complaint ¶ 104. The jury found Liberty not guilty on this charge.

Count I alleges generally that Bennett acted maliciously or with ill-will such that malice can be implied. Complaint ¶¶ 112, 113, 116. The allegations are sufficient for purposes of the Motion to Dismiss.

**2. Count II: False Imprisonment**

A false imprisonment claim must be commenced within 2 years after the cause of action accrues. 14 M.R.S.A. § 753. A false imprisonment action accrues on the last day of the imprisonment. *See Williams v. Ford Motor Co.*, 342 A.2d 712, 715 (Me. 1975); *Jedzierowski v. Jordan*, 172 A.2d 636, 637 (Me. 1961). As such, the court need only address incidents occurring after July 24, 2001.[2]

The only alleged "imprisonment" not barred by the statute of limitations

---

[2] The plaintiff argues that the cause of action did not accrue until the *final* time Attorney Bennett falsely imprisoned Liberty. The incidents the plaintiff alleges, however, are separate and distinct and do not comprise on-going imprisonment.

occurred when Bennett caused Liberty to be arrested for violating his probation by taking anabolic steroids. The plaintiff contends that he stated a cause of action for false imprisonment because Bennett intervened to instigate an arrest by law enforcement officers.[3] In response, the defendants argue that Maine only recognizes a claim for false imprisonment when the circumstances demonstrate that the defendant requested the police officer's presence at the meeting as a prearranged tactic designed to lead to the plaintiff's arrest.

Under the circumstances alleged, false imprisonment requires that Bennett assisted "a law enforcement officer in making an arrest or otherwise instigating the officer to enforce a warrant." *Holland v. Sebunya*, 2000 ME 160, ¶ 19, 759 A.2d 205, 212. In order for such liability to attach, "there generally must be some action on the part of [the citizen], such as physically assisting the officer," *id.*, or persuading and/or influencing an officer to make a false arrest. RESTATEMENT OF THE LAW (SECOND) TORTS § 45A (1965). Providing information to a law enforcement body, which then obtains a warrant, even if that warrant is later deemed improperly issued, will not support liability. *Id.*

Here, the complaint only alleges that Bennett relied upon expert testimony that he then supplied to the appropriate agency. Nothing suggests that Bennett personally physically restrained the plaintiff or persuaded the officer to arrest Liberty. Rather, the complaint merely alleges that Bennett provided credible, expert information to law enforcement. See Complaint ¶¶ 80, 82.

### 3. Count III: Defamation

Common law defamation consists of:

---

[3] The plaintiff cites *Forgie-Buccioni v. Hannaford Bros., Inc.*, 413 F.3d 175, 179 (1st Cir. 2005), which applied New Hampshire law and *Wagenmann v. Adams*, 829 F.2d 196, 209-10 (1sst Cir. 1987), which applied Massachusetts law, in support of this argument.

(a) a false and defamatory statement concerning another;
(b) an unprivileged publication to a third party;
(c) fault amounting at least to negligence on the part of the publisher; and
(d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Lester v. Powers*, 596 A.2d 65, 69 (Me. 1991) (citation omitted). In order to survive a motion to dismiss, a complaint for defamation must allege all four of these elements. *Vahlsing Christnia Corp. v. Stanley*, 487 A.2d 264, 267 (Me. 1985). Furthermore, like false imprisonment, causes of action for defamation must be commenced within 2 years after the cause of action accrues. 14 M.R.S.A. § 753. In this case, with three exceptions, the statute of limitations bars the actionability of Bennett's alleged defamatory statements.[4] *See* Complaint ¶¶ 50, 56, 64, 67, 82.

Scott Liberty alleges that on July 28, 2001, Bennett placed plastic bags containing pills in Liberty's garage and then falsely stated that Bennett had just found the bags of pills in the garage. Complaint ¶ 100. The complaint lacks an allegation that Bennett, without privilege, published the statement to a third party. The allegation is vague and could have been a privileged communication. Similarly, the plaintiff's allegation that Bennett told people in Cumberland County that Liberty raped Darlene Cobb fails because the plaintiff did not allege that the statement was false or that Bennett made the statement with fault at least amounting to negligence.[5] Complaint ¶ 47.

Finally, the plaintiff alleges that in May of 2002, Bennett contacted Probation and

---

[4] Arguably, the statements outside the limitations period that Bennett made to effectuate the arrest of Liberty on the terrorizing charge could be defamatory. *See* Complaint ¶¶ 101-103. These statements, however, are not alleged to be false and the ADA's disposition on the matter only demonstrates that the State lacked probable cause to charge the crime.

[5] Indeed, the State charged the plaintiff with gross sexual assault, a felony, against his wife but he ultimately pleaded guilty to two misdemeanor counts of assault. The misdemeanor counts were based on the same allegations from Ms. Cobb that led the district attorney to charge gross sexual assault. This tends to demonstrate that the plaintiff would not be able to allege fault amounting to at least negligence. The plaintiff claims that this argument, however, is non sequitur because rape is a felony and the plaintiff plead to misdemeanor charges.

7

Parole and falsely accused Liberty of possessing and/or discharging firearms. Complaint ¶ 108. The plaintiff does not allege that Bennett made this statement with fault amounting to at least negligence. Notably, the allegation ends abruptly, without indicating whether the officers recovered evidence regarding possession of, or discharge from, firearms. *See* Complaint ¶¶ 108-109.

### 4. Counts IV and V: Trespass and Conversion

The plaintiff alleges that Bennett, with the authorization of Darlene Cobb but without Liberty's authorization, entered Liberty's New Gloucester home on several occasions. Complaint ¶¶ 25, 57, 71, 85 130, 131. The plaintiff alleges that Bennett unlawfully entered the New Gloucester home because Darlene Cobb transferred her interest in the home to Liberty in 1999 and the instances of alleged trespass occurred after Darlene transferred title. Complaint ¶ 9. Furthermore, the complaint claims that Cobb, at the direction of attorney Bennett or Bennett acting on his own accord, took property belonging to Liberty from the New Gloucester home after transfer of title. Complaint ¶¶ 26, 32, 57, 71, 91. Regarding these counts, the defendants argue that the plaintiff cannot, as a matter of law, state claims for trespass and conversion because the alleged instances of trespass and conversion occurred when the real and personal property was still presumed to be martial property.[6]

Pursuant to 19-A M.R.S.A. § 953(3), "[a]ll property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation is presumed to be marital property regardless of whether title is held individually . . . The presumption of marital property is overcome by a showing that the property was acquired by a method

---

[6] Liberty and Cobb married in 1986 and on March 23, 2000, Cobb filed for divorce. Complaint ¶¶ 6, 19.

listed in subsection 2."[7] In Maine, "once a divorce petition is filed, each spouse is deemed to have a beneficial interest in marital property to which the other spouse holds legal title." *Am. Guarantee & Liab. Co. v. Keiter*, 360 F.3d 13, 19 (1st Cir. 2004) (applying Maine law) (citation omitted). Pending a final divorce decree, however, the court can "determine the possession of owned or rented real and personal property." 19-A M.R.S.A. § 904(5) (2005).

The plaintiff has not alleged that the New Gloucester home or the personal property taken from it constituted nonmartial property. The plaintiff also did not allege that Cobb affirmatively relinquished her rights to martial assets before August 31, 2001, when the court allocated the martial property. The plaintiff contends that the defendants' argument fails because the torts of trespass and conversion require possession, and Cobb (or her agent, attorney Bennett) trespassed and converted personal property.

The plaintiff's argument ignores, however, that when Cobb filed for divorce, Liberty also acquired beneficial title to marital property. In order for Liberty to be able to entirely exclude Cobb from the New Gloucester home and its contents, and therefore

---

[7] In pertinent part, subsection 2 states:

> For purposes of this section, "marital property" means all property acquired by either spouse subsequent to the marriage, except:
>
> A. Property acquired by gift, bequest, devise or descent;
>
> B. Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise or descent;
>
> C. Property acquired by a spouse after a decree of legal separation;
>
> D. Property excluded by valid agreement of the parties; and
>
> E. The increase in value of property acquired prior to the marriage and the increase in value of a spouse's nonmarital property as defined in paragraphs A to D.

19-A M.R.S.A. § 953(2).

9

be able to sue for trespass and conversion, he needed possessory title to the property. *See State v. One Blue Corvette*, 1999 ME 98, ¶ 13 n.9, 732 A.2d 856, 859 n.9 (stating that "examples of such possessory rights [to exclude a spouse from a car] would include the court ordered right of a spouse to possess a vehicle owned solely by the other spouse during the pendency of a divorce proceeding"). Liberty could have, but did not, obtain this title through a court order issued pursuant to 19-A M.R.S.A. § 904(5). Consequently, as a matter of law, the plaintiff cannot sue for violation of his possessory rights.

**5. Count VI: Assault**

A defendant commits assault if "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such contact, and (b) the other person is thereby put in such imminent apprehension." RESTATEMENT (SECOND) TORTS § 21 (1965).

In July 2001, Bennett brought a handgun to the deposition of pastor Peter Daignault. Complaint ¶ 76. Bennett displayed the gun to Liberty and Daignault's counsel. *Id.* Allegedly, Bennett told Michael Liberty that he had a gun and wished he had used it to kill Scott Liberty. Additionally, on April 10, 2002, Bennett drove up next to Liberty in the parking lot of DHHS and said "I may just be an attorney, but I will kill you if you ever come near me." Complaint ¶ 107.

It is reasonable to infer that by bringing a gun to the deposition, Bennett acted with the intent to cause Scott Liberty harm and that the mere presence of such a weapon at an event such as a deposition placed Liberty in fear. Similarly, by telling Scott Liberty that he would kill him, the court may infer that Bennett acted with the intent to harm Scott Liberty and that he was placed in fear.

The defendants argue that the doctrine of collateral estoppel applies to plaintiff's assault claim, warranting dismissal. In 2004, Liberty based a protection from

10

harassment action on the two previously mentioned episodes, but the District Court dismissed the complaint after trial on the merits. The defendants contend that collateral estoppel prevents re-litigation in this case because the plaintiff had a fair opportunity to litigate the incidents in the prior action. Nonetheless, the doctrine of collateral estoppel applies when the *identical factual* issue was determined by a prior final judgment and the estopped party had a fair opportunity to litigation the issue in the prior action. *State v. Hughes*, 2004 ME 141, ¶ 5, 863 A.2d 266, 268. In this case, the 2004 PFH did not address whether Bennett committed the tort of assault; rather, it concerned whether those actions amounted to harassment sufficient enough for a restraining order.

### 6. Count VII: Intentional Infliction of Emotional Distress

To prevail in an action for intentional infliction of emotional distress, Scott Liberty must establish that:

> (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from [his] conduct;
> (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community;
> (3) the actions of the defendant caused the plaintiff's emotional distress; and,
> (4) the emotional distress suffered by the plaintiff was so severe that no reasonable [person] could be expected to endure it.

*Curtis v. Porter*, 2001 ME 158, ¶ 10, 784 A.2d 18, 22-23. "A person acts recklessly if [he] knows or should know that [his] conduct creates an unreasonable risk of harm to another person and the unreasonableness of [his] actions exceeds negligence." *Id.* Moreover, severe emotional distress "means emotional distress, created by the circumstances of the event, that is so severe that no reasonable person could be expected to endure it." *Botka v. S.C. Noyes & Co.*, 2003 ME 128, ¶ 17, 834 A.2d 947, 952. Finally, in an intentional infliction of emotion distress claim, the court determines "in

the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery." *Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, ¶ 16, 711 A.2d 842, 847 (internal quotations and citations omitted).

At this stage in the proceedings and without additional evidence about the circumstances surrounding the gun-at-the-deposition incident, this occurrence could rise to the level of outrageous conduct.

The plaintiff also argues that Attorney Bennett's relentless and deliberate campaign to harass Liberty states a claim for intentional infliction of emotion distress. The unactionable campaign includes Bennett orchestrating Liberty's arrest on several occasions, *see* complaint ¶¶ 14-15, 44-46, 48-53, 56, 62-63, 82, 101-104; Bennett and Darlene Cobb's entry into the New Gloucester home and procurement of personal property; and Bennett's announcement to people in the community that Scott Liberty raped Cobb, see complaint ¶ 47.

### 7. Counts VIII and X: Negligent Infliction of Emotional Distress and Negligence

In count VIII, the plaintiff alleges that Bennett had a "duty to act ethically and professionally." In count X, Liberty alleges that Bennett "had a duty to act ethically, reasonably and professionally in the practice of law." In Maine, however, an attorney does not owe any duty to his client's adversary. *MacKerron v. Downing*, 534 A.2d 359, 360-61 (Me. 1987). Accordingly, the plaintiff cannot state a cause of action for negligence or negligence-based claims.[8] *Barnes v. McGough*, 623 A.2d 144, 146 (Me. 1993).

---

[8] Liberty attempts to salvage these claims, arguing that if Attorney Bennett "if not intentionally, then negligently caused Mr. Liberty to be falsely imprisoned, wrongfully prosecuted, defamed and deprived of his property and contractual rights." This argument, however, contradicts the allegations supporting those claims. The plaintiff consistently alleged that Attorney Bennett intentionally and deliberately acted, without alleging any kind of duty.

## 8. Count IX: Interference with Contractual Relations

To state a claim for interference with contractual relations, a plaintiff must allege 1) the existence of a valid contract; 2) interference with that contract through fraud or intimidation; and 3) damages caused by such interference. *Gordan v. Cummings*, 2000 ME 68, ¶ 14, 756 A.2d 942, 946. The plaintiff alleges that Bennett interfered with Liberty's contractual relationship with Donald Cray and with the contractual relationships between the plaintiff and various lawyers. Complaint ¶¶ 163-164.

Regarding the alleged contractual interference between the plaintiff and Donald Cray, the plaintiff claims that on July 21, 2001, Bennett, accompanied by Darlene Cobb and two security guards, entered the New Gloucester home and ordered Cray, a tenant, to leave the premises. Complaint ¶¶ 85, 87-88. When Cray returned to the home, he found the windows were locked, the locks had been changed and a "no trespassing" sign had been posted. It is reasonably to infer that Bennett intimidated Cray into leaving the home due to the presence of the security guards. Including the guards, Cray was outnumbered 4-1, and likely felt compelled to leave.[9]

## 9. Count XI: Negligent Supervision

In this count, the plaintiff alleges that the Bennett Law Firm breached its duty to supervise and direct attorney Bennett in the practice of law. Complaint ¶¶ 170-173. It appears that Maine only recognizes the independent tort of negligent supervision of an employee when the plaintiff alleges facts that establish a special relationship with a

---

[9] The defendants also argue that the plaintiff should be judicially estopped from alleging the existence of any contract between Liberty and Cray. According to the defendants, in his disclosure statement of assets, Liberty makes no mention of any income from a lease with Cray. Liberty also did not mention any existing tenant during a prior hearing with the court (J.Cole), which specifically addressed the New Gloucester home. The plaintiff requests that the court take judicial notice from an exhibit attached to the motion to dismiss (ex. 6, pg. 25). Such notice, however, would convert the motion to dismiss into a motion for summary judgment because the document is neither central to the plaintiff's claim nor did the plaintiff reference it in the complaint. *See Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 11, 843 A.2d 43, 48.

defendant pursuant to section 315(b) of the Restatement. *See Fortin v. Roman Catholic Bishop of Portland*, 2005 ME 57, ¶¶ 19, 39, 871 A.2d 1208, 1216, 1222; *Mahar v. StoneWood Transport*, 2003 ME 63, ¶ 10, 823 A.2d 540, 543. Restatement 315(b) only concerns special relationships where a party has an affirmative duty to prevent *physical* harm. Here, the plaintiff did not allege any physical harm, and as a result, the court need not consider the relationship between The Bennett Law Firm and the plaintiff *vis-à-vis* attorney Bennett.

**10. Count XII: Vicarious Liability**

For the Bennett Law Firm to be vicariously liable for the alleged torts of attorney Bennett, the plaintiff must allege the existence of a master-servant relationship. *See Peerless Ins. Co. v. Hannon*, 582 A.2d 253, 255 (Me. 1990). "The right of employers to control the activities of those working for them and to begin and terminate the relationship are crucial factors in establishing an employment relationship." *Id.* Once establishing an employer-employee relationship, the plaintiff must demonstrate that attorney Bennett committed the torts during the scope of his employment. *McLain v. Training & Dev. Corp.*, 572 A.2d 494, 498 n.4 (Me. 1990). Whether an employee acted within the scope of employment is a question of fact. *Springer v. Seamen*, 821 F.2d 871, 881 (1st Cir. 1987) (applying Maine law).

In this case, the plaintiff alleges that The Bennett Law Firm employed attorney Bennett and that he committed torts during the scope of his employment. Complaint ¶ 178. The only tort, however, the Bennett Law Firm could be vicariously liable is the assault. That occurred during a deposition, clearly within attorney Bennett's scope of employment.

**11. Violation of the Maine Civil Rights Act**

In pertinent part, 5 M.R.S.A. § 4682 provides:

14

> Whenever any person, whether or not acting under color of law, intentionally interferes or attempts to intentionally interfere by physical force or violence against a person . . . with the exercise or enjoyment by any other person of rights secured by the United States Constitution or the laws of the United States or of rights secured by the Constitution of Maine or laws of the State or violates section 4684-B, the person whose exercise or enjoyment of these rights has been interfered with, or attempted to be interfered with, may institute and prosecute in that person's own name and on that person's own behalf a civil action for legal or equitable relief.

Again, the only incident that remains to which this would apply is the alleged assault. Assuming that State laws secure the plaintiff's right to be present at a deposition, Liberty has stated a claim for a violation of the Maine Civil Rights Act.

## B. Third-Party Defendant's Motion to Dismiss

Michael Liberty seeks to dismiss count I, the contribution claim, count VIII, the civil conspiracy claim, and count IX, the punitive damages claim of the third-party complaint. He also argues that the court should dismiss all counts because Bennett did not properly join the claims against the third-party defendant.

### 1. Improper Joinder

Although M.R. Civ. P. 18(a) allows a party to join independent claims to a third party complaint, Rule 14(a) only allows a defendant to interplead a third party "who is or may be liable to such third-party plaintiff for all or part of the plaintiff's claim against the third-party claim." M.R. Civ. P. 18(a). As a result, the viability of counts II through IX, the Bennetts' independent claims, depend on the resolution of the contribution claim. *See BCC Equip. Leasing Corp. v. Bedard*, 2004 U.S. Dist. LEXIS 18663 *26 (D. Me. Sept. 17, 2004) *aff'd*, 2004 U.S. Dist. LEXIS 21522 (D. Me. Oct. 25, 2004) ("if such a derivative claim exists, the [independent] negligence claim could proceed under Rule 18, as a claim that is properly joined with the derivative claim"). As discussed below, the contribution claim fails, so the independent claims must be dismissed.

15

## 2. Count I: Contribution

The Bennetts allege that in the event that they are found liable to Scott Liberty, then Michael Liberty is liable to them for some or all damages awarded. The Bennetts claim that: Michael Liberty and/or his agents are responsible for entering the New Gloucester home and removing and converting Scott Liberty's personal property and interfering with his alleged contractual relationship(s); Michael Liberty is responsible for inflicting emotional distress upon Scott Liberty because attorney Bennett never made the statements attributed to them by Michael Liberty; Michael Liberty is responsible for abuse of process, false imprisonment, defamation, intentional infliction of emotional distress, negligent infliction of emotional distress, and violation of the Maine Civil Rights Act because attorney Bennett and the Bennett Law Firm acted upon Michael Liberty's instruction and information; and at all relevant times, attorney Bennett and the Bennett Law Firm relied upon the statements made by Michael Liberty.

Michael Liberty argues that the contribution claim fails as a matter of law for two reasons: First, Maine law bars contribution or indemnity among tortfeasors for intentional torts; and secondly, regarding the negligence-based contribution claims, Michael Liberty argues that because Bennett does not owe Scott Liberty any duty, this aspect of the contribution claim fails.[10] In response, Bennett argues that the motion to dismiss is premature because the court has not yet addressed their motion to dismiss the complaint.

Contribution is not available to an intentional tortfeasor.[11] *Bedard v. Greene*, 409

---

[10] Because the negligence and negligence-based actions in Scott Liberty's complaint are dismissed, the court need not address this aspect of the contribution claim.

[11] Although acknowledging the general rule regarding contribution and intentional tortfeasors, the Bennetts attempt to make an equity-based argument. Relying on the Restatement (Second) of Torts § 886A and other jurisdictions' application of it, the Bennetts contend that this court should modify the hard-line *Bedard* rule and allow contribution for intentional torts involving willful and wanton conduct,

16

A.2d 676, 677 (Me. 1979). After eliminating the allegations in count I that sound in negligence, the third-party complaint only seeks contribution for intentional torts. Consequently, Count I should be dismissed.

## C. Bennetts' Motion to Amend

On August 7, 2003, to avoid the running of certain statutes of limitations, Justice Cole lifted the stay in this case to allow Bennett to file their third-party complaint. Justice Cole did so "as a matter of fairness and for purposes of judicial economy." On January 6, 2006, this case finally became active, and on March 3, 2006, Bennett filed his amended third-party complaint.

The Bennetts argue that in the event the court grants Michael Liberty's motion to dismiss the third-party complaint, the court should toll the statute of limitations and allow an amendment to the third-party complaint. According to Bennett, the amendment to the third-party complaint would reassert the independent claims in a separate action by striking the contribution claim and changing the heading. The Bennetts also believe that the separate action should be consolidated with *Liberty v. Bennett et al*, CV-03-421.

Strict application of the statute of limitations would be inequitable. Bennett relied upon Justice Cole's August 2003 order that deemed the third-party complaint filed as of August 5, 2003 and never sought to file a separate action. Furthermore, Michael Liberty will not be prejudiced by the amendment; he has had over a year of notice of the claims asserted against him. Consequently, the court tolls the statute of limitations, allows the

---

reckless conduct, gross negligence and other areas of fault between negligence and actual malice. As observed by Michael Liberty, however, the *Bedard* case is analogous to the present case and the Law Court has not modified the *Bedard* rule.

17

amendment of the third-party complaint,[12] and consolidates the cases for judicial economy.

## IV. DECISION AND ORDER

The clerk will make the following entries as the Decision and Order of the court:

**A. Motion to Dismiss by Jeffrey Bennett and The Bennett Law Firm**

1. The Motion to Dismiss is granted as to the following counts:

   a. Count II, false imprisonment
   b. Count III, defamation
   c. Count IV, trespass
   d. Count V, conversion
   e. Count VIII, negligent infliction of emotional distress
   f. Count X, negligence, and
   g. Count XI, negligent supervision

2. The Motion to Dismiss is denied as to the following counts:

   a. Count I, abuse of process
   b. Count VI, assault
   c. Count VII, intentional infliction of emotional distress
   d. Count IX, interference with contractual relations
   e. Count XII, negligence based on vicarious liability
   f. Count XIII, violation of the Maine Civil Rights Act

**B.** The Motion to Dismiss third-party complaint by Michael Liberty; however, Jeffery Bennett and The Bennett Law Firm have 14 days in which to file an amended third-party complaint, in which case the Motion to Dismiss is denied.[13]

SO ORDERED

Dated: _____ 29 2007 _____

_____
Thomas E. Delahanty II
Justice, Superior Court

---

[12] An amendment of a pleading relates back to the date of the date of the original pleading when the claim in the amended complaint "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original." M.R. Civ. P. 15(c)(2). Thus, an amended complaint hen, *ipso facto*, relates back to the August 5, 2003 filing date.

[13] Bennetts' right to file an amended third-party complaint is without prejudice to another challenge by Michael Liberty.

18

CUMBERLAND COUNTY SUPERIOR COURT
PO BOX 287
PORTLAND ME 04112

First Class Mail

JOHN BRANSON ESQ   -Pltf
PO BOX 7526
PORTLAND ME 04112-7526

CUMBERLAND COUNTY SUPERIOR COURT
PO BOX 287
PORTLAND ME 04112

JEFFREY THALER ESQ
BERNSTEIN SHUR SAWYER & NELSON
PO BOX 9729
PORTLAND ME 04104-5029

First Class Mail

First Class Mail

CUMBERLAND COUNTY SUPERIOR COURT
PO BOX 287
PORTLAND ME 04112

RICHARD CAMPBELL ESQ
CAMPBELL CAMPBELL & EDWARDS
ONE CONSTITUTION PLAZA
BOSTON MA 02129

First Class Mail
First Class Mail
First Class Mail

CRLAND COUNTY SUPERIOR COURT
3X 287
.AND ME 04112

First Class Mail

First Class Mail

JOHN CHAPMAN ESQ
PO BOX 168
PORTLAND ME 04112-0168






STATE OF MAINE
CUMBERLAND, ss.



SUPERIOR COURT
CIVIL ACTION
Docket No. CV-03-421
TED-CUM-4

SCOTT A. LIBERTY,

Plaintiff,

v.

**CONSOLIDATED CASES**

JEFFREY BENNETT and
THE BENNETT LAW FIRM P.A.,

Defendants,

and

JEFFREY BENNETT and
THE BENNETT LAW FIRM P.A.,

Plaintiffs,

v.

MICHAEL A. LIBERTY and
JUDY POTTER,
Defendants.

**ORDER ON SCOTT LIBERTY'S
MOTION TO DISMISS COUNTERCLAIM
(Counts II, III, V, VI)**

Counterclaim defendant Scott Liberty moves to dismiss Counts II (assault) and III (defamation) on grounds that they are time barred and were brought outside the statute of limitations. Liberty's motion does not consider the period during the court approved stay and that the time governing a counterclaim arises out of the transaction or occurrence that is the subject of the plaintiff's claim. Pursuant to 14 M.R.S. § 865, such time "shall be computed as if an action had been commenced therefore at the time the plaintiff's action was commenced."

Liberty also seeks dismissal of Count V, "Aiding and Abetting" as not recognized in Maine. Both parties cite *Cohen v. Bowdoin et al*, 288 A.2d 106 (Me. 1972). The *Cohen* case recognizes a concert of action that may result in criminal liability;

however, it is dependent upon proof at trial of an independently recognized tort. The Law Court stated "this Court has explicitly decided that as general law that 'conspiracy' fails as the basis for imposition of civil liability absent *the actual commission of some independently recognized tort,* and when that tort has been committed, *it is that tort,* and not the fact of combination, which is the foundation of the civil liability." *Id.* at 110. (underscore added, italics in original.) Therefore, as a cause of action, Count V must be dismissed.

Defendants' counterclaim asserts the "tort of outrage," Count VI. They make the claim as a basis for punitive damages based on the element of malice or implied malice to obtain punitive damages. *Tuttle v. Raymond,* 494 A.2d 1353 (Me.1985). A claim for punitive damages must rest on proof of other recognized tortious conduct that is committed with malice or implied malice. Maine does not recognize a claim for "tort of outrage." Count VI must be dismissed.

The clerk will make the following entries as the Order of the Court:

 A. Counterclaim defendant Scott Liberty's Motion to Dismiss Counts II and III is denied.

 B. Counterclaim defendant Scott Liberty's Motion to Dismiss Counts V and VI is granted.

SO ORDERED.

DATED: August 20, 2008

          Thomas E. Delahanty II
          Justice, Superior Court

2

## CV-03-421 Liberty vs. Bennett attys

| | |
|---|---|
| Plaintiff Scott Liberty | John Branson, Esq. |
| Counterclaim Defendant Scott Liberty | William Kelleher, Esq. |
| Plaintiffs Jeffrey Bennett & the Bennett firm | Jeffrey Bennett, Esq.<br>Joanne Simonelli, Esq.<br>Howard Cooper, Esq. |
| Defendants Jeffrey Benentt & the Bennett firm | Jeffrey Thaler, Esq. |
| Defendant Michael Liberty | John Chapman, Esq. |
| Defendant Judy Potter | Russell Pierce, Esq. |